Just go through some of the procedure that we'd like to follow because of the class appeals. Case number 11-1125, Council of the Interested, 12-2395, Brown v. Sullivan et al. v. Law Office of Chessick. We would like to follow this framework that the Law Offices of Chessick will proceed first and have 15 minutes dealing just with the subject matter of the appeal, of the Chessick appeal. Then the Sullivans will be allowed a total of 25 minutes, first 15 minutes in response to the Chessick appeal and 10 minutes allotted for discussion of the issues on their appeal. Then we'll go back to the Chessick firm and allow 10 minutes to respond to the Sullivan issues and 5 minutes in reply in support of the Chessick appeal. Again, we know that there may be a little bit of adjustment based on questions and discussion, but if you could stick to this as well as you can, we would appreciate it. And you'll need to speak loudly so that we can all hear you. That is a recording device and not a microphone. So with all that, we will begin. Thank you, Your Honor. May it please the Court, I'm Kenneth Chessick from the Law Office of Kenneth Chessick. I appreciate the time allocations and I'll do my best to follow it. First, I'd like to just point out that in the Sullivan briefs, there are just a whole host of factually incorrect misstatements. We've read the records. Okay. Specifically, I'd like to just point out that there was no 2-1401 order entered as the basis of jurisdiction in this case as suggested. Second, of course, no judgment has ever been laid against the law firm of Kenneth Chessick. And that there was no evidentiary hearing by Judge Zwick in the underlying case. Also, I'd point out to the Court that requests of Sullivan's to supplement the record were denied, and yet in their brief they repeatedly referred to things that occurred after the entry of the Notice of Appeal, which was on April 15, 2011, and I asked that they be disregarded. Going to the substance, this is a fee dispute and we earned our fee. We, I believe, did a phenomenal job, a spectacular job, on both the underlying medical negligence case and the bad faith case. In the underlying medical negligence case we got a... Counsel, I hate to interrupt you, but there are really issues that we would like you to address. Okay. And we know the history of the case and how we got here. All right. The Court found there was no extraordinary efforts or result, and I think that is just belied by the facts. I mean, we took a case, frankly, the... When we got the $10 million verdict, we had a decision to make, because there was only, I'll round it off, $7 million in coverage, the $950 from the first settlement and the $6 million that the hospital had in its insurance. And so we were faced with a dilemma. How do we proceed from there? We could have attached the hospital's assets. We chose not to do that. We could drive it into bankruptcy. We could attach its accounts receivable. This is the only hospital in Ogle County. It was important to do that. And so we accepted the assignment, even though there were very powerful defenses to that assignment. Rochelle Community... By the way, the assignment are the rights of Rochelle Community Hospital against its insurance. This is not a personal injury case that we accepted. The assignment that we accepted was a bad faith failure to settle. And, in fact, there were some very substantial defenses. Rochelle Community Hospital never made a demand on OHIC to settle the case. They never requested, even though they had their own independent attorney, they never demanded settlement. They had valid reasons not to settle the case. I know Justice Lampkin has kind of tried to focus you. And I don't mean to cut you off, because there was a tremendous verdict on behalf of your clients. Really, nobody is disputing that. But now we need to know you got to Cook County and you brought a bad faith action, and it was resolved. It was resolved. Through seven and a half years. Okay. And then there was a dismissal of the lawsuit based upon that settlement. Yes. Now, bring us there and what happened and why you think... I only had one choice. I could only go one place after we got that settlement for the $2.75 million. This is not a personal injury case. I've represented both minors and wrongful death cases in Cook County throughout my career and have gotten many, many verdicts. This was not an issue of being unfamiliar with 6.4, Cook County Rule 6.4. But that applies to personal injury cases, and I think that's very well established both in the rule itself as well as in the memorandum, the March 2007 memorandum. This applies to personal injury cases. This was not a personal injury case that we were dealing with. Furthermore, the... Can I just interrupt you there? Counsel, is it your position that the memo limits Rule 6.4 because the language in 6.4 certainly doesn't say that it's limited... Yes. ...to personal injury cases? Yes, that's correct. So the circuit court rule trumps the Supreme Court? It could only apply to claims of the minor, and by claims is a vague term in this 6.4, because certainly not a cause of action of the minor. The cause of action that was the basis of the...belonged to OHIC. I mean, belonged to Rochelle Community Hospital. Okay. The lawsuit that you brought, the named planets were hooked. Yes. Who were they? In the Cook County bad faith action, you brought it on behalf of... On the parents and on the mother as guardian of the minor. Okay. And so the...what...and the verdict, let me go back a step. The verdict on the male case, that covers both the interests of the parents, their own individual injuries as a result of the negligence, and the child's injury. Yes. So then when you go to Cook County and the bad faith, you're trying to cover the difference between the settlement and the verdict, and again, the difference is the minor's... The minor has an interest in the outcome, but it is not a claim of the minor. The cause of action that we prosecuted was a bad faith claim that belonged to OHIC. I mean, to Rochelle. But you brought it on behalf of the named plaintiff, where the parents in their own individual capacity, and the mother on behalf of the minor. Yes, no question about that. So there's a minor plaintiff involved. Has an interest in the outcome, but it's not the minor's personal injury case that was being litigated. But it was a claim of a minor. It was a claim in the sense it was an interest. It's not a cause of action, and I think that's where the confusion arose. This is not a cause of action of the minor. The minor's cause of action was completely different than the cause of action that we prosecuted on behalf of... that was assigned by Rochelle. So you're saying the parents and the mother on behalf of the plaintiff were stepping into the shoes of the hospital. Of Rochelle, yes. Okay. Yes, Your Honor. And so as assennees of the hospital, they were bringing this claim. That's correct. That's all that they could do. Counsel, I have a question, though. Yes, sir. In the Cook County action, the outcome, one way or another, would not that have affected the minor's estate? It certainly had. Yes, there was an interest that the minor's estate had, without a question. And that's why this needed to go back to Ogle County for exactly that purpose. What we accepted was an asset in exchange for releasing the hospital. And that asset belonged to the estate, without a doubt. And that's why it had to be under the probate, in this case it's the Ogle County court. So you took the settlement funds and you went back to Ogle County, the Ogle County judge wearing the probate hat, and said, help us distribute this. That's correct. And that was the only place, and that goes back to 6.4. Even in Cook County, if this were a personal injury case, it would have to go to probate. It would still have to go to probate. And the probate, and this has happened to us multiple times, the probate judge isn't bound by the law division judge. Right. But someone needed, if 6.4 applied, someone needed to make a finding that this was a reasonable, good faith settlement. According to the settlement's position, right. And that was not done by either Ogle County or Cook County. There was a motion that would have been brought by the defendant in this case. It would have no reason for us to bring that. We don't have to bring that. That's required because to protect them from any subsequent litigation. That's not something that the plaintiff has to bring. In a typical personal injury suit in Cook County when there's a settlement, who brings that motion? The defendant. Because they want to protect themselves from any subsequent claims. There's no reason to bring it. There was no objection to the settlement. Not at any time. We were, everyone was delighted with the settlement. Yeah, we're certainly not questioning the amount of the settlement. And it was paid promptly and there was no issue there. Frankly, I could, I considered whether to bring this under 6.4, but it clearly, you can't read it outside of that memo, which was affecting the March 07 memo from the chief judge. It clearly was relating to personal injury cases. The only place, and I had a probate judge who knew the case, who knew the parties, who knew the individuals. But I think it would have been error to bring it under 6.4 because 6.4 did not apply to this. There was no dispute about this settlement. It was a great settlement. The parties were delighted. The guardians at Lytton was delighted. We were delighted. It was paid promptly. They were glad, the defense was glad to get out of the case. And we brought it promptly to the probate court in Ogle County where it belonged. And did they have, did the judge conduct a mandatory hearing to determine if it was reasonable? And if the fees were reasonable? And if the litigation cost was reasonable? The judge understood. Counsel, please answer my question. Was there a hearing in Ogle County that's comparable to the 6.4? There was a hearing, and it was presented to the judge with notice to the guardian at Lytton who approved it, to the clients who approved it. They were given copies of this beforehand. Everyone agreed with this. Now, as far as the fee, I even reduced our fee on this. We had an arguable basis to, under our contract, to demand 47% of the entire $9.7 million that we recovered. And we chose not to do that. There was no dispute here. And I think that's really important for the court to understand. There was never a dispute during any of this. Everybody thought it was fair. They thought the work was great. They didn't think that it was an appropriate fee. There was no issue here. And frankly, the first time I became aware of a fee dispute, of any issue at all, was on January 6th. Now, remember, this was on November 12th. December 12th comes and goes. There's no challenge on the Cook County order. We get a letter, faxed to us from defense, from the Raymond firm, firing us and telling us not to contact the, that the client had fired us and instructing us not to contact them. And even in that letter and even in that communication, there's no dispute about the fees. Now, there was an issue here with the Raymonds. We had a lawsuit going on. Again, they sued me. The case had subsequently been dismissed. So there was a lot of enmity. Raymond is an ex-employee of mine. I'm so sorry. It's okay. Even on January 6th, we had no. I know you got that on us. We know it because we've read the record. Can you talk about the issue of jurisdiction? Yes. There's only, 6.4, I believe, does not apply because this is not a personal injury action. I think the statute itself is vague. It doesn't describe, A, what a claim is. It doesn't indicate, is it any interest of the minor? It doesn't distinguish between the interest of the minor and the interest of the adults. I don't think there's any question that the right of an adult to contract is impaired by 6.4. It doesn't give any guidance on how an allocation is to be made and where it's to be made. But if I may go back to January 6th because it's important to this, Your Honor. On January 6th, I no longer represent a party, and I'm not a party. At that point, I am now deprived of even ability to go into court to file a motion. I went to the GAL and asked the GAL, this is in, I'm sorry, not in January. In March, the Raimonds file a motion in front of the trial judge, Judge Zwick. This is now four months later, and I go to the GAL, because I can't file a motion to reconsider the fees. Because I'm not a party. I don't have the ability to do that. I asked the GAL to file a motion to reconsider. Because if there's an issue here, let's get it fleshed out. I don't have, that was the first time I had notice of any issue here. In the meantime, there was a valid order. No one disputes that the order from Ogle County was a valid order. No one disputes that there was no objection to it. Time went by when, at some point, you know, I have to comply with the order and distribute the funds. It's not voluntary. It's mandatory. And I did that. And then it's five months later when they file this. So did the circuit court have jurisdiction over the issue? Yes. And over you? So. At the time the motion to rule under 6.4 was filed. All right. So now we're into, when they file this motion, asking the court to reconsider, not reconsider. Have a hearing under 6.4. They file a 2-1401, which would be the only basis, I believe, for them to have jurisdiction. Because I don't think 6.4 allows it. And that, and the court never ruled on the validity of that. It never ordered, said that the basis of my jurisdiction is 2-1401. It said 6.4. So any suggestions to the contrary are in fact maligned by the record. All right. I have a question. If the court never ruled on the 2-1401 petition, is there any injustice if this court reframes the issue of jurisdiction as proper under Section 2-1401 based upon the petition that was filed? Yes. There's got to be evidence. There's got to be an evidentiary hearing on that. There's got to be an opportunity for us to participate. You see, here's the other, this is why I go to this issue. I'm no longer a party. I can't issue a request to admit. I can't issue an interrogatory. I can't issue a notice of deposition. I can't compel testimony. I'm so severely limited because I can't even use all of the process that we have that protects us. Counsel, I'm sorry to interrupt you. Under the 2-1401, was there a timely request for an evidentiary hearing? No, there was not. No. This was filed five months after the dismissal, and that's certainly not timely. Okay? They knew if they had a problem, and I presume they had a problem in January when we got fired, they had clear time to file that motion, and they knew these rules, but they didn't do it. Furthermore, not only was it not timely, there was no new facts. The suggestion that the court wasn't aware that this was involving a minor is belied by all of the pleadings because, as the court pointed out accurately, it's right there in the caption. Plus, we had had discussions with the judge. Didn't Judge Zwick say she didn't know that the case involved a minor? I think that's a statement. I read the record, and I certainly read in the record that she said that. She said that. That's a statement made six months later, and I think that, you know, again, there was no evidentiary hearing. And then she wrote it. I know. But the fact is, how could she not, when it's right there on the captions? We had discussions about the case at the time, which, obviously, there's no way you don't talk about the  Was it settled as a result of a conference with her, a settlement conference with the judge? We had, yeah, she was the fourth judge or third judge that we were sent to. We explained the case to her. We came back the next day and discussed it. We had filed our motions in limine. And then there was some discussion, but not a formal conference.  And then we went and got the order. Is there any issue of our jurisdiction when the 1401 petition appears not to have been ruled on? Well, I don't think that, yes, I think that the, as you know, what we're asking is that the entire, all of the court's orders following the November 2009 order be declared no, because the court doesn't have jurisdiction. The circuit court did not have jurisdiction. The circuit court doesn't. Right. Well, if they didn't rule on the 21401, couldn't we remand it for the court to rule on the 21401 that was filed? And have the hearing to determine if it was timely while there was a meritorious claim. In all fairness, I think it's too late. I think that either the court has jurisdiction or it did not. Well, if they didn't rule on a 21401 petition that was filed within two years. The record indicates that she said I did not give jurisdiction based upon this. And Judge Lampkin is asking is there. 21401. She said it was based upon 6.4. Judge Lampkin is asking is there any impediment to a remand from this court for consideration of that 1401 petition? Should we find the court lacked jurisdiction on the other motion? None of the factors that are necessary to find 1401 were present, even in the limited parts that we have. But I think that without jurisdiction, I don't know how the court could do that in all fairness. I understand you're saying without jurisdiction you can't. I'm saying without jurisdiction you can't have jurisdiction. It's a catch-22. I appreciate that problem. But the fact is these orders were based upon what I believe to be. But there's other issues as well. I mean, if 6.4 does not apply, then there's no basis for it. Obviously, then the rest of it becomes even more significant. There's no reason to be in Cook County if that doesn't apply. But if we rule that 6.4 applies, if we rule that the judge did not retain jurisdiction under the settlement and didn't get their jurisdiction back under the settlement, couldn't the judge have gotten it back on the 21401 petition? And if it wasn't ruled upon, do we still have jurisdiction? Because the court would have granted the 21401 based upon the allegations in the 21401 petition. And I know you said you didn't respond, that you couldn't file anything, but you filed a reply to the petition. And in the survey reply that you filed, you responded to the 21401 petition. But we're still done without the ability to provide. See, there was no evidentiary hearing on this. Counsel. I understand what you're saying. The court said they were going to rule on the 21401 based upon the writings. The court said that. So if you can't answer my question, that's fine. Yeah, I don't think I can. I don't think I can. I thank you for your time. Thank you, Counsel. Thank you. Should you have gone to Ogle County with this? I mean, the Ogle County had the jury on the medical malpractice. The Ogle County court was familiar with what the injuries were and the evidence and why that verdict was reached. And then the probate court was dealing with the proper distribution of all these. To then shift it. I know that the case was brought in Cook County later. But it seems like the Ogle County court was moving forward. You came in after all that was done. There is a sense that this delayed and confused things. And we're dealing with the minors. We're dealing with the minors' money for what appears to have been a significant injury. I understand that the Ogle County judge in this particular case did have experience with these people. With the medical malpractice case that had been tried before him. However, this was a different case. It's not a medical malpractice case. It's this bad case. And if you had acted quickly. But now it's back in Ogle County. Ogle County knows what a jury, the value that a jury put on this injury. And these issues dealing with compromise, making sure that a compromise of a minor's claim gets done properly, gets a little complicated in this situation. Because the value of the minor's claim has already been established by a jury. And Ogle County is out there trying to do the best it can. Distributing those funds and then it just gets thrown off the track so drastically. And I have real concerns about that. Actually, they have a format in Ogle County to review cases that they are fair and reasonable or just and reasonable that is very similar to Cook. Rule 12.5, which was cited in the brief, actually requires that the trial judge pass on a case being just and reasonable and then it get assigned to the probate judge. Which is very similar to Cook. Correct. But nothing prevented the probate court, and nothing I would think would prevent a probate court here in Cook County from stepping back and saying that stuff wasn't done. Perhaps in all fairness and interest of the minors and getting this all wrapped up, making sure what appears to be a settlement nobody has contested is fair and reasonable, gets done as efficiently as possible. It's just that there were rules in place that weren't followed. Yeah, and that was unfortunate. Assuming that we accept that 6.4 applied under all these different steps, that there had already been a jury verdict, that this was an assignment, that we don't usually put a jury verdict through these steps. To have just gone back to Ogle County, now that the proceeds were there, the minor was there, the guardian was there. This has really thrown this. We had two courts going at the same time. They're not even in the same county. And then Ogle County finally went, okay, whatever, and give up. So now all those issues are now moot, really, because Ogle County vacated their orders. And so we're left to unravel this. And a child has been left without the proceeds through this period. And I'm sorry. Let's go back to what you did. You brought it to Cook County and you said, Judge Swick, this is a minor. You should have said, is this fair and reasonable? And she said, it's a minor, should have done that. And she vacated the dismissal of the case. Correct. Is that not beyond the retention of her jurisdiction to enforce the settlement? It is not. And can you tell me why that is so? In the dismissal order that was drawn, she specifically retained jurisdiction to enforce the terms of the settlement. And it's the common practice in Cook County when we're dealing with death cases or minor's cases or people with disabilities, that we have to go to the court and get these things approved and get our fees approved and our costs approved. And this is common. So the costs and the fees part was being taken care of in Ogle County, correct? No, they had not. It was not done in Ogle County? No. The settlement amount, what happened in Ogle County after this case, the Cook County case was dismissed? What was filed in Cook County was something entitled an inventory. You mean in Ogle County.  I misspoke. I apologize. So it was an inventory. It was just a line item thing of here is what the settlement was, here's what the attorney fee was, here's what the advance costs were. And what did the Ogle County judge do? Pardon me? They approved that, correct? He accepted that inventory, correct. But there was none of the information that's supposed to be provided to the judge so that he can assess the case. This is the same judge that heard the trial? Yes. And had been dealing with the proceeds of the $6 million that resulted from this trial? Correct. And so you're saying that that judge, having heard the trial and having dealt with the probate matter, wouldn't have been informed enough to have dealt with these issues that you brought to Cook County? Actually, Judge Pemberton is a very bright judge, not that I'm a... No, I know you're not, but... But the difference, and this is something that you had asked the question of, Mr. Chesek, earlier, that what was an issue was the difference between the jury verdict and the amount of money that had been paid for insurance. But in a bad faith claim, the hammer in a bad faith claim is punitive damages. That's the threat that makes insurance companies pay far in excess of the difference. I mean, that's the whole point of a bad faith case. Okay. So now, but that goes more to... Are you saying that goes more to what the settlement amount was? To be able to assess the settlement and whether it was just and reasonable on a bad faith case is a different thing than looking at the settlement of a medical malpractice case. And that judge in Ogle County, who was familiar with the parties, the injuries, everything that had gone forward, would have known better than the judge who got a case assigned to it at trial and settled it a day later. Not having, it seems to me, not having even done the motions in limine. So the issues, anyway, I don't mean to distract from what actually happened. So you came in on a Rule 6.4. You asked the judge to do this. You're saying that she did have jurisdiction? Yes. Because she had retained authority to enforce the settlement. Correct. And so what the probate act requires is that these findings be made by the court and that a settlement that is attempted to be reached between parties and there is no such finding is essentially void. And there was no finding here that the settlement was just and reasonable. And where do you get the authority that it was then void? What was void about the order? Well, if we're looking at a settlement between parties, and we could talk about the cases that were cited in the brief, but Burton, Mastrioni, Villa-Lobos, all those cases stand for the fact where there was, like, a settlement done pre-suit by the parents for the claim of a minor. And then the minor, when she hits majority, files a lawsuit. And the insurance companies come in with the releases and say, this isn't any good, you have to dismiss the case. And they said, you never got it approved in probate. Were both those cases also involved in situations where there was error or mistake on part of the parent or the guardian? And there wasn't that in this case, right? For example, in the Smith case, didn't the parents sign a release unbeknownst to them that there was some other conditions involved with the child? I'm thinking of the case with, I think it's Villa-Lobos is the main one, where they just did a quick settlement. Right. The auto accident. Pardon? The auto accident. They did a quick settlement. Right. Yes, they did a quick settlement. And then they filed a suit later on. And because they hit, you know, there's a process here. You're supposed to, if you settle a case pre-suit and it's a minor's case, you have to go get probate approval. Right. If it's above a certain level. But my point is, in those type of situations, the guardian or the parent committed a mistake or an error. What was the mistake or error here? I don't think there was a mistake or error, but there was certainly a requirement. I mean, we have these protections in place with the Probate Act to protect the minor not only from unscrupulous lawyers or people seeking to take advantage, but unscrupulous parents as well. And these are important. Opinion after opinion talks about the minors being wards of the court and they require special protection. And then you have a situation where an attorney fee of 47% is being charged when even the retainer agreement that had been signed a few weeks before this action was filed set attorney's fees at 37%. And there was no justification given for this 47% fee. It was just taken. And then this inventory was filed in probate court. The protections for a minor were sidestepped. Does that necessarily make it all void or avoidable? I mean, we could discuss this. Has the case ever been dismissed again? Judge Zwick vacated the dismissal. Did she ever dismiss it again? Yeah. In her written opinions that are on appeal, I think she, again, finds that the settlement was just and reasonable. But does she use some magic words that say the case is dismissed? I don't recall. I apologize. I couldn't find it. I couldn't find those words, dismissed. What I wanted to point out is I believe there's two indisputable facts here that just seem to me to be the most important in the case, is that at the time of the administration out in Noble County, before this bad faith case was filed, $100,000 of the minor's money was taken, segregated, and used to fund this litigation. And those $100,000 came from the minor, specifically the minor? The minor's estate. Yes, they did. And the next thing was is this. Which is a strong factor to consider whether 6.4 applies here. Yes. There was a specific retainer agreement. This is the second fact. The specific retainer agreement was drawn up by the Cheswick firm. So they had an old med mal with the statute. This is a new retainer agreement signed immediately before the bad faith case was filed. And it was on behalf of the minor. And it was for a straight 37% fee, so it didn't have to be subject to the med mal statute with the lower fee amounts as the old statute was. And those two facts show that this wasn't the minor's case. This is the minor's claim that was being prosecuted here. And it should have gone through. Well, at least in part. I mean, there was still the adult. I mean, there was a difference in the parent's recovery, too. Yes. And Judge Swick, yeah, considered that. She did. So she did the allocation on the same basis as the jury did. And Judge Swick went through all of the factors in Rule 1.5 with regard to found that they had not proven to her that they deserved any more than a one-third fee with regard to the minor's recovery. She considered everything. They filed multiple motions to reconsider. But they didn't provide any independent evidence of things like what's the normal fee charged in a bad faith case or what experience did counsel have in prosecuting bad faith cases. Clearly, he's very experienced in medical malpractice, but bad faith is almost like a negligent justice. I think there's such meatier issues other than maybe the actual numbers that came out in the end. Let's look at Rule 6.4. If it runs into constitutional issues in that it says shall be a certain amount, which may interfere with the right to contract, is the fact that Judge Swick didn't stick with that shall, if you will. She conducted her own analysis to determine whether it should be higher than a third. So if it's not unconstitutional as applied, do we still have to determine whether it's unconstitutional on its face? No. I think when we're looking at the scheme set up in the rules in Cook County, the Rule 6.4 needs to be read in conjunction with the joint memorandum that was issued by the chief judges of the probate law and municipal divisions. Does that go more to the analyzing it on its face or how it was actually applied in this case? How it was actually applied in this case. It talks about the factors in the Clay case and how these kinds of things should be analyzed. I know there was a Justice Simon opinion is what's sticking in my mind about the Supreme Court case that talked about the Lake County setup with the 25%, but they had an out in their rule, which Cook doesn't have. But then the memorandum came out, which talks about, yeah, you still should consider these other factors and not be limited to the one-third. And that was clearly what Judge Wick was talking about. So this memorandum doesn't have strong footing as an authority. It's not a court rule. It's not a regulation that went through some kind of administrative decision-making that's clear, that's recognized. But we could, you're saying, argue that the memorandum helps in determining in an as-applied context. Exactly. And I think that's exactly what Judge Wick said at the time when she was in her rulings that were on appeal. What about the 1401 petition? If we were to say that Judge Wick either didn't have jurisdiction or went beyond her jurisdiction in enforcing the settlement, is that 1401 fair game for us now? I believe that jurisdiction you're reviewing, you know, you can fix any jurisdiction problem here on appeal as far as if there's a good basis for her to have jurisdiction, be it the 215.01 or be it her specific retention of jurisdiction in her November 2009 order that the court would have jurisdiction to still do a 6.4 hearing. Like your honors pointed out, it was brief, and Judge Wick felt in her written opinions that she had retained jurisdiction, and so that was the specific basis. But clearly there was also a basis under 214.01. It was brought promptly, and I think Mr. Cheswick has argued that before the court, that it had not been brought promptly. But we did go through proceedings out in the local county just to get the file and find out what was going on. The attorney who brought the 214.01 had to be hired, Mr. Gubbins, who handled everything before Judge Wick. So, I mean, there were steps that the family had to go through. Plus the family was relying on their longtime lawyer to have done the right thing, and they weren't immediately questioning what had happened. These are not people with equal understanding of what had happened under law to realize that maybe they got charged $350,000 too much. Did the 214.01 petition specifically request an evidentiary hearing? I don't believe it requested an evidentiary hearing. But as Your Honor pointed out, I don't believe Mr. Cheswick ever requested an evidentiary hearing as well. So I think any objections to that would be well-founded. So in conclusion, I think we've discussed the jurisdictional basis for the court. This is clearly a minor's claim. His money was taken from his account to fund the claim. The retainer agreement for this case was signed in his name. There were the settlement releases, things like that, were signed on his behalf. The case caption contained his name. And ultimately the money was to go back to his estate in Ogle County. These protections are set up for minors to protect them from this kind of situation and to have the court be able to review fees for being reasonable. That was not done. It should have been done. And when Judge Zwick had an opportunity, she conducted a full review. She allowed the Cheswick firm to fully participate and file everything they needed. And she believed that the 33 and a third percent fee was fairly reasonable for them. She's entitled to the highest level of deference in the review, abuse of discretion, that no reasonable person could have agreed with her. Unless that's found, her review should stand. Thank you very much. Did you want to talk about your appeal? Yeah, the other appeal dealt with the fact that, just the gist of it, is that the Sullivans are at risk here. There's a substantial amount of money at stake, $350,000. And it's been a long time that they've been denied that money. And since that time, I know from the press that Mr. Cheswick has merged his firm into another. The people who work for him are doing other things. And I don't know what's going to happen as far as the future may go, but he's holding all this money, and the Sullivans, they're at risk for not having it because he never filed a bond in this appeal. And so they should be able to proceed and get the $350,000 back that should never have been taken in the first place. Can you help me with some of Judge Swick's comments about what exactly she did regarding the overpayment of fees? Did she actually say that there was a judgment? She seemed to say when these other proceedings went on, well, no, I didn't do that. So is there a judgment against Cheswick Firm? She ordered that he repay the money. Is that in one of her words? He shall repay the money. So that's how we interpreted it. If he shall repay the money, he's not, he's not posting a bond, then we should be able to go collect it. Wasn't there a motion to reconsider on that? And then she said, yeah, I really did issue a judgment, but I mean, something like that. Right. But I can't now say it because I've lost jurisdiction. Right, and there's nothing I can do at this point. Right. And the case law that, the main case that stood out is the General Motors versus Pappas case, which talked about, you know, is this a part of the main issue that's up on appeal, or is this just something collateral to that? And in that case, it dealt with post-judgment interest, and they found that, yeah, you can still go get post-judgment interest, even though the other issue is up on appeal. It doesn't directly impact the questions here, does it, what was going on? In the GM Pappas case? No, in what you were doing in trying to enforce the judge's orders. The judge could have gone ahead and done that, is that right? That's the argument we're making in the appeal, is that she had the power to do that. Thank you very much. Your Honor, Judge Pemberton specifically stated in one of the transcripts that he approved our fees and expenses. So any suggestion to the contrary is incorrect. There's never been an issue in this case as to whether the settlement was fair and reasonable. This is the first time that it's coming up. I think everyone agreed that this was a great settlement, and everybody was delighted about it. On the issue of the retainers, there are two retainers. There are two attorney contracts. They're not mutually exclusive. There's nothing in the second contract which indicates that it abrogates or supersedes the first one. The reason there's a second contract, Your Honor, is because of the – this is a contingency fee contract. It's got to be in writing, agreed to by the parties, by the plaintiff in this case, and it has to comply with the Code of Professional Responsibility. They have a new defendant. Ohit was not a defendant in the first one, and that's why I created the second contract. There's nothing in this contract which says that it abrogates the fees on the first one. The first one clearly states that we're entitled to 47 percent of the total collected, and this second was clearly contemplated even at the time of the first settlement, which is why at the convenience of the plaintiff, the funds to prosecute that were allocated by the court. This was not to protect us. This was to protect them. But did you request that allocation of the hundred? This was for their convenience, and their – Who's their? They being the clients, Your Honor. We told them that this was going to require substantial sums to prosecute this, and we thought that $100,000 would cover that, and they said fine, just have it allocated. But it was taken totally from the miners' proceeds. This was their decision, not mine. I didn't – I'm not at risk for those costs. In fact, they were the ones who were responsible for those costs. This was at their convenience that we did this. This was totally for them, not – any suggestion to the contrary. You know, by law, they're responsible for the costs in prosecuting the case, and they understood that, and it's laid out expressly in the contract. The contract clearly, the first one and the second one, indicates that. And under the first one, which was operative as well, I couldn't prosecute the Ohik case without another contract, contingency contract in writing, without violating the code, and I wouldn't do that. That's why there's a second contract. But there's nothing that ever suggested that the first one was no longer operative. It was – there would be no reason – and it's irrefutable evidence that the reason that the allocation of that $100,000 for the expenses was for the prosecution of the collection action. And we succeeded. This – the argument here is that somehow they were mutually exclusive, and there's nothing to suggest that. In fact, quite the contrary. If I can go to the point of 6.4. We make the argument in our brief, and I want to emphasize it, that it is unconstitutional on its face because it impermissibly requires a one-third fee on the adults. Can you answer the question that Judge – I'm sorry. Rochford. I was going to say Mary Kay. That Judge Rochford asked counsel for the Sullivans, and that is if Rule 6.4 is constitutional as applied to your case because Judge Buswick – Yes, it is unconstitutional. Let me – I'm sorry. Is it – do we get to a facial constitutionality issue if it's constitutional as applied to you? Do we ever even have to address it? Again, I think you're going off my pay grade, Your Honor. You're over – I'm not sure I can answer that question. If it's – if you find that it's unconstitutional as applied, as I think clearly is, is that – No, I said if we find it's constitutional as applied to you because the judge went beyond Rule 6.4, then do we even get to a facial challenge to it? This goes to judicial comedy, and frankly, I'll be honest with you, it's – That's fine. I don't know is the answer to that. I appreciate your candor. One last piece on – it was never a judgment entered against us. Counsel comes in and wants a bond, and he wants interest, post-judgment interest, and without any statutory basis for that. It's got to be based upon a statute, and there has never been a judgment entered against us. And so, therefore, it would be totally inappropriate because she thinks that it's necessary to protect the minor. I'm still alive and well, and my firm is now merged with Clifford's. We're healthy. I'm healthy. Knock that away. This is an equitable argument, but an equitable argument that's beyond – that is beyond the power of the court. This has got to be based upon a specific statute, and there has never been a judgment applied, and there has never been a bond applied there. And, again, they had the opportunity – even if they wanted to, there was no – I'm not a party. There was no way to enter a judgment against us, and there is – they have remedies. They're not devoid of remedies. They had a remedy. The preferable one, I tried to get it all into Ogle County to respond to the court's point. That's the court that knew about this case, and that's the court that should have done this. They chose not to. On the other side, to be fair, so I don't look like I was pounding the solvents too much, you did bring the bad faith action in Cook County. Sure, sure. But the probate was – I asked that because we had already left Cook County and gone to Ogle County, but we were in Cook County. I think it would have been improper for me to bring this into Cook County. 6.4 just doesn't apply to this case. I don't think you can read 6.4 without reading the memorandum. It's clearly – it is clearly – I'm not aware of a single case in Illinois which suggests that 6.4 applies to a bad faith claim, which is what this is. Now, every bad faith claim has got an underlying case, of course. That's the nature of it. Every single one of them. So you could – but there's never been a case that indicates that a bad faith contract claim is somehow transformed into a personal injury or a wrongful death case that 6.4 applies. I don't think you can read them separately from the memorandum because that's sort of like a comment to the IPI or a comment to the Rules of Professional Responsibility. It's intended to be read as part of that. It's not just a matter of here's the procedure. It's the procedure in these cases. This would be a new – I guess a ruling of first impression to rule that 6.4 applies to a – We wouldn't say it applies to every bad faith case.  Thank you, Your Honor. In sum, I do believe that the court should rule that all of the orders after that November 12, 2009, ruling be vacated as null and void because the court had no jurisdiction to do that. They had – oh, let me just address one issue regarding counsel. I was fired on January 6th. These are lawyers. They knew about 1401. They knew that time was of the essence. They knew that they couldn't sit on it. Understand, under an order to distribute these funds, I do that. At some point, there's got to be finality. Five months, I think that's more than enough, especially when they had all the information they needed if they thought that they had a valid 1401. I think they struggled because they didn't have that information, and I don't believe that the court had jurisdiction under either statute. Thank you. Thank you, counsel. Thank you. Very briefly, counsel talked about the bad faith retainer agreement as not being mutually exclusive with the earlier medical malpractice agreement. If the court will review the actual content of both of those agreements, what you will see is a preamble in the beginning that talks about who the case is going to be against. So the medical malpractice case talks about it's going to be against a doctor in a hospital. When you look at the bad faith retainer agreement, it talks about it's going to be a case against OHIC. So to say that the OHIC case is somehow governed by the Med-Mal agreement is contradicted by the actual content of the retainer agreement that was prepared by the Chessett firm. In addition, what's promised as far as the attorney's fees in the OHIC agreement is extraordinary fees. Extraordinary services are going to be provided for 37%. So, again, it's a situation now where he's saying he provided extraordinary services. Well, they had a right to expect extraordinary services under the circumstances and they were well paid for those services. They didn't need the extra $350,000, 75% of which came from the minor and 25% from the parents. And just so the court keeps this in mind, this is a minor who is extremely severely injured. He's got quadriparesis, terrible cerebral palsy. He's confined to a wheelchair. He's got morphine pump. He's just really in bad shape, which is why a $10 million verdict was just in order to count. This is someone who needs this money. And it's really wrong that the attorney sidestepped the rules that are to protect minors like this and then put the money in his own pocket. Thank you. Thanks. Thank you. The case will be taken under this next bit.